IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AERO MARINE ENGINE, INC.

                              CV 05-1469-AS

            Plaintiff,

                       FINDINGS AND RECOMMENDATION

      v.

TRANSPORTER, INC., a Nevada
Corporation; CRAIG DELLA PENNA;
and DANIEL H. WERNER,

                 Defendants.
_____

ASHMANSKAS, Magistrate Judge:

## BACKGROUND

On May 26, 2005, Aero Marine Engine, Inc. (Aero Marine),
filed its complaint in the District of Nevada alleging as
follows:  Aero Marine and/or International Equity Partners, S.A.,
(IEP) desired to acquire the proprietary technology of defendant
Transporter, Inc. (Transporter).  The technology, which was a
principal asset of Transporter, consisted of secured conference

software.  On August 24, 2004, Transporter entered into a contract with IEP entitled "Exclusive Purchase Agreement" (Agreement) in which IEP agreed to purchase all of the issued and outstanding stock in Transporter in exchange for cash and one million shares of stock in Aero Marine, to be issued to Transporter's officers, Craig Della Penna and Daniel Werner.  As provided in the Agreement, IEP assigned its rights thereunder to Aero Marine, which issued stock to Della Penna and Werner.  In addition, IEP executed a contract assigning its rights under the Agreement to Aero Marine.

Aero Marine now claims that Della Penna and Werner made wrongful misrepresentations regarding the proprietary Transporter software that induced IEP and/or Aero Marine to enter into the Agreement with Transporter.  Aero Marine further alleges that Della Penna and Werner wrongfully threatened to file an involuntary bankruptcy petition against Aero Marine and/or lodge a complaint with the Securities and Exchange Commission if they did not receive stock and/or cash in addition to the consideration provided under the Agreement.  Based on these allegations, Aero Marine asserts claims against Transporter, Della Penna and Werner for securities fraud, racketeering, intentional misrepresentation, negligent misrepresentation, breach of contract, and breach of the duty of good faith and fair dealing.  Aero Marine seeks recision of the Agreement with

Transporter, a declaration that the Agreement and all associated agreements and transactions are null and void, compensatory damages, treble and punitive damages, and an injunction barring Della Penna and Werner from transferring or encumbering their Aero Marine stock while this action is pending.

After Aero Marine filed its complaint, Della Penna and Werner filed an involuntary Chapter 7 bankruptcy petition against Transporter, their co-defendant in this action.  Della Penna and Werner then moved the Nevada court to dismiss Aero Marine's complaint in this action due to: (1) improper venue; (2) failure to include an indispensable party (specifically, IEP); and (3) failure to state a claim upon which relief can be granted.  Della Penna and Werner alternatively moved to strike portions of the complaint, to make it more definite and certain, and to transfer the action to the District of Oregon.  On September 12, 2005, the Nevada court granted the motion to transfer and denied the remaining motions without prejudice.[1]

---

[1]  The Nevada court's denial of the remaining motions is at issue here.  In fact, Aero Marine filed a Motion for Sanctions against Della Penna and Werner for filing the instant motion. Aero Marine contends that the instant motion was decided by the Nevada court when it granted the change of venue and denied the remaining motions; Della Penna and Werner maintain that the Nevada court did not reach the other issues raised in the motion before the Nevada court once it decided to transfer venue.  The Civil Docket entry for the motion filed in the District of Nevada reflects that the remaining motions were denied without prejudice.  As such, the court will consider the substance of the motion here.

On October 16, 2005, Aero Marine served Della Penna and Werner each with a Notice for Application of Default Judgment. On October 20, 2005, Aero Marine filed Motions for Entry of Default against those defendants, who in turn filed a Motion for an Enlargement of Time in Which to Appear.  The court denied the Motions for Entry of Default against Della Penna and Werner and granted Della Pena and Werner's Motion for an Enlargement of Time in Which to Appear by December 20, 2005.  (There is no issue that Transporter must appear at this time because the filing of a petition for bankruptcy operates as an automatic stay of any action against the debtor.  11 U.S.C. § 362(a).)

On December 20, 2005, Della Penna and Werner filed the pending Motions Against Plaintiff's Complaint as its first appearance.  By its motions, Della Penna and Werner seek to: (1) dismiss all of Aero Marine's claims pursuant to Rule 12(b)(7) for failure to join a party under Rule 19; (2) dismiss Aero Marine's complaint in its entirety pursuant to Rule 12(b)(6) for failure to state a claim; (3) strike the second cause of action (Racketeering) because there is no allegation that Della Penna or Werner were convicted of a predicate crime; (4) strike the fourth cause of action (Securities Fraud) because it is founded on Nevada law and Oregon law applies to the dispute; (5) strike the seventh cause of action (Breach of Contract) because Aero Marine failed to perform their obligations under the Agreement; (6)

4 - FINDINGS AND RECOMMENDATION                                    [LB]

strike the ninth cause of action (Preliminary and Permanent Injunction) because Aero Marine stock was given to Della Penna and Werner as partial performance of the Agreement; and (7) make paragraph 11 of the complaint more definite and certain to specify which representations were made to Aero Marine and which were make to IEP and by which defendant.  Oral argument was heard and, for the reasons set forth below, Della Penna and Werner's Motions Against Plaintiff's Complaint should be granted in part and denied in part.

## DISCUSSION

### I.   Motion to Dismiss -- Fed. R. Civ. P. 12(b)(7)

#### A.   <u>Legal Standard</u>

Fed. R. Civ. P. 12(b)(7) permits a defendant to present a defense based on a plaintiff's failure to join a party.  Rule 19(a) defines those persons who should be joined as parties to the action, and Rule 19(b) supplies the result when joinder of such a party is not feasible. C. Wright, A. Miller & M. Kane, <u>Federal Practice and Procedure</u>, § 1604 at 40.  The party raising the defense has the burden of showing that the absent party is needed for a just adjudication.  <u>Sierra Club v. Watt</u>, 608 F.Supp. 305, 321 (E.D.Cal. 1985).

When confronted with the issue of whether a party is necessary to an action, a court must initially determine whether:

> (1) in the person's absence complete relief
> cannot be accorded among those already

> parties, or (2) the person claims an interest
> relating to the subject of the action and is
> so situated that the disposition of the
> action in the person's absence may (I) as a
> practical matter impair or impede the
> person's ability to protect that interest or
> (ii) leave any of the persons already parties
> subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent
> obligations by reason of the claimed
> interest.

Fed. R. Civ. P. 19(a). If one of these tests is satisfied, the court must order the joinder of the absent party. Fed. R. Civ. P. 19(a). However, should the court determine that joinder of the absent party is not feasible, Rule 19(b) provides a nonexhaustive list of factors to consider in determining whether "in equity and good conscience" to dismiss the action, regarding the absent party as indispensable, or to proceed without the absent party:

> The factors to be considered by the court include:
> first, to what extent a judgment rendered in the
> person's absence might be prejudicial to the person or
> those already parties; second, the extent to which, by
> protective provisions in the judgment, by the shaping
> of relief, or other measures, the prejudice can be
> lessened or avoided; third, whether a judgment rendered
> in the person's absence will be adequate; fourth,
> whether the plaintiff will have an adequate remedy if
> the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Under Rule 19, pragmatic concerns, especially the effect on the parties and on the litigation, control a court's decision on joinder. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 119 (1968).

B.  <u>Discussion</u>

The issue before this court is whether, absent IEP's joinder as a plaintiff, complete relief can be accorded and whether Della Penna and Werner will be subject to a substantial risk of duplicitous litigation.  Della Penna and Werner contend that IEP is an indispensable party because they were the other party to the Agreement and the assignment by IEP was not a novation.  In addition, Della Penna and Werner assert that claims for intentional or negligent misrepresentation to IEP cannot be transferred.

Aero Marine argues that IEP is not a necessary party because paragraphs C and E of the initial recitals in the Agreement establish that IEP assigned its rights under the Agreement to Aero Marine.  Paragraph C provides:  "IEP is willing to finance, directly or indirectly, the construction and trials of the technology and assign to Aero Marine Engine, Inc., and Aero Marine consents to this assignment."  Paragraph E states: "This agreement is assignable to Aero Marine Engine, Inc."

The court finds that all of IEP's rights and interest under the Agreement were assigned to Aero Marine on August 24, 2004, in connection with the execution of the Agreement.  In other words, on the date the Agreement was effective, IEP no longer had any interest under the terms of the Agreement.  At oral argument, Aero Marine's counsel represented to the court that IEP has no

rights under the Agreement and no claims to assert.  Rather, IEP assigned all of its rights under the Agreement and is unable to pursue any action against Della Penna and Werner, potentially exposing them to multiple litigation.  Moreover, there is no indication that IEP's presence is necessary before the parties can be afforded complete relief from this action.  The court finds that IEP is not a necessary party and thus is not required to be joined in this action.  Della Penna and Werner's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) and 19(a)(1) for failure to join a party should be denied.

**II.  Motion to Dismiss -- Fed. R. Civ. P. 12(b)(6)**

    A.  <u>Legal Standard</u>

A motion to dismiss will be denied unless it appears that the plaintiff can prove no set of facts upon which relief could be granted.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco</u>, 792 F.2d 1432, 1435 (9th Cir. 1986).  All material allegations in the complaint must be taken as true and construed in the light most favorable to plaintiff.  <u>NL Industries, Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).  Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6)

motion.  <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).

    B.   <u>Discussion</u>

Della Penna and Werner ask the court to dismiss Aero Marine's complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Rule 12.  Della Penna and Werner set forth no other explanation, argument, or legal authority for their request to dismiss this action.

In response, Aero Marine cites the Rule 12(b)(6) standard and concludes that:

> The allegations set forth in Aero Marine's Complaint sufficiently establish a basis for Aero Marine to bring forth evidence to establish the legitimacy of those allegations and to establish a basis for judgment against the defendants.  Therefore, this court should deny Defendants' Motion.

Della Penna and Werner's motion to dismiss is insufficient, lacking explanation, argument, or legal authority for their request.  Accordingly, Della Penna and Werner's motion to dismiss Aero Marine's complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) should be denied.

**III. Motion to Strike**

    A.   <u>Legal Standard</u>

Pursuant to Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter."  A motion to strike serves two basic functions: it provides an early challenge to the legal sufficiency of a defense, <u>California v. United States</u>, 512 F.Supp. 36, 38 (N.D.Cal. 1981), and is also the primary method to attack defects or objections that cannot be addressed by a motion to dismiss.  A motion to strike may also be granted where "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  <u>LeDuc v. Kentucky Central Life Ins. Co.</u>, 814 F.Supp. 820, 830 (N.D.Cal. 1992).

The court notes that in most instances Della Penna and Werner's motion to strike seeks relief from the court dismissing certain enumerated claims.  As such, their motion should be construed as a motion to dismiss.  In those instances, the court will consider Della Penna and Werner's "Motion to Strike" as a motion to dismiss for failure to state a claim and apply the standard for Rule 12(b)(6).

    B.    <u>Discussion</u>

        1.    Second Cause of Action - 18 U.S.C. § 1864(c) (Racketeering)

A plaintiff has a private right of action under RICO for injuries to "his business or property by reason of a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c).  Section 1962, in turn, lists four separate acts which form the basis for RICO liability: "(a) to invest income derived from a pattern of racketeering activity in an enterprise; (b) to acquire or

maintain an interest in an enterprise through a pattern of racketeering activity; (c) to conduct the affairs of an enterprise through a pattern of racketeering activity; or (d) to conspire to commit any of the above acts."  18 U.S.C. § 1962(a)-(d)).  To allege RICO injury, a plaintiff must demonstrate that it suffered a "concrete financial loss."  Oscar v. University Students Co-Op Ass'n, 965 F.2d 783, 785 (9th Cir. 1992)(quotations omitted).  A plaintiff must also demonstrate that the injury was proximately caused by RICO predicate acts. See Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992).

Della Penna and Werner contend that Aero Marine's second cause of action, a RICO claim, should be stricken because there is no allegation that they have committed a crime as required before bringing a private RICO action based on securities fraud. Aero Marine responds that it is not basing its RICO claim on securities fraud.  Rather,  Aero Marine alleges that Della Penna and Werner's use of mail and wire communications for fraudulent purposes violated RICO.  Aero Marine also alleges that through threats and acts of intimidation, set forth in the complaint, Della Penna and Werner attempted to affect interstate commerce through extortion and the wrongful use of fear.

The court must consider whether Aero Marine can state a claim under RICO in light of the Private Securities Litigation

Reform Act (PSLRA), enacted in 1995, which bars the use of securities fraud as a predicate civil RICO offense.  The PSLRA amended RICO by narrowing the kind of conduct that could qualify as a predicate act.  Section 107 of the PSLRA, known as the Rico Amendment, amended 18 U.S.C. § 1964(c), to provide in relevant part as follows:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962 . . . .

18 U.S.C. § 1964(c).  The Conference Committee Report accompanying section 107 states that the amendment was intended not simply "to eliminate securities fraud as a predicate offense in a civil RICO action," but also to prevent a plaintiff from "plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." H.R. Conf. Rep. No. 104-369, at 47 (1995).  In following this directive, the Ninth Circuit has stated, the PSLRA was enacted to "address a significant number of frivolous actions based on alleged securities law violations." Scott v. Boos, 215 F.3d 940, 945 (9th Cir. 2000).  "The intent was substantive--to deprive plaintiffs of the right to bring securities fraud based RICO claims." Id.

In interpreting the term "conduct . . . actionable as fraud in the purchase or sale of securities," some district courts (including this one) have utilized the Supreme Court's interpretation in <u>S.E.C. v. Zandford</u>, 535 U.S. 813, 819 (2002), of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.  <u>See</u>, <u>e.g.</u>, <u>Sell v. Zions First Nation Bank</u>, 2006 WL 322469 (D.Ariz. 2006)(slip copy); <u>Blythe v. Deutsche Bank AG</u>, 399 F.Supp.2d 274 (S.D.N.Y. 2005); <u>Swartz v. KPMG, LLC</u>, 401 F.Supp.2d 1146 (W.D.Wash. 2004); and <u>King v. Deutsche Bank AG</u>, 2005 WL 611954 (D.Or. 2005).  Section 10(b) makes it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . ., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."  15 U.S.C. § 78j.  Rule 10b-5, which implements this provision, forbids the use, "in connection with the purchase or sale of any security," of "any device, scheme, or artifice to defraud" or any other "act, practice, or course of business" that "operates . . . as a fraud or deceit."  17 C.F.R. § 240.10b-5; <u>see</u> <u>also</u> <u>Zandford</u>, 535 U.S. at 819.

In <u>Zandford</u>, the Court endorsed the SEC's "broad reading" of that phrase, and held that "it is enough that the scheme to defraud and the sale of securities coincide."  <u>Id</u>. at 819-820. Thus, the appropriate inquiry for this court is whether predicate

act allegations in the complaint occurred "in connection with" the purchase or sale of securities.  See, e.g., Bald Eagle Area School Dist. v. Keystone Financial, Inc., 189 F.3d 321, 327 (3d Cir. 1999); Sell, 2006 WL 322469 at *8; Swartz, 401 F.Supp.2d at 1151.

The parties agreed that Aero Marine would purchase all of the issued and outstanding stock in Transporter in exchange for cash and one million shares of stock in Aero Marine to be issued to Della Penna and Werner.  It is clear from the face of the complaint that the parties were engaged in the purchase and sale of securities and Aero Marine's claims arise from the circumstances surrounding the negotiation and execution of that purchase and sale.  Aero Marine argues, nevertheless, that the mail and wire fraud and extortion allegations have no relation to securities fraud and therefore may serve as predicate offenses under the civil RICO statute.  The court will consider each of these alleged independent acts to determine whether they occurred "in connection with" the purchase and sale of securities.

In its complaint, Aero Marine alleges Della Penna and Werner committed wire and mail fraud by transmitting fraudulent misrepresentations through the mail and telephone wires and by receiving the fraudulently obtained Common Stock and cash consideration paid by Aero Marine through such means.  The court finds that these predicate acts are connected to the securities

fraud.  Indeed, Aero Marine's securities fraud claims are grounded, in part, in the same acts alleged by Aero Marine to have transpired through the mail and wires.  In other words, the same facts that support the mail and wire fraud claim also support a claim for securities fraud.  The mail and wire fraud conduct cannot be parsed to create a separate or independent cause of action.  Rather, the mail and wire fraud conduct were "part and parcel" of the securities fraud and "based on conduct that would have been actionable as securities fraud."  Clearly, the predicate acts were undertaken "in connection with" the purchase and sale of securities.  Accordingly, section 107 of the PSLRA bars Aero Marine's mail and wire fraud claims as predicate acts under the civil RICO statute.

More difficult is Aero Marine's allegation of extortion as a predicate act.  Paragraph 15 of Aero Marine's complaint alleges the following:

> Subsequent to the execution of the Agreement and the issuance of the Common Stock, Della Penna and Werner appeared at an Aero Marine shareholders' meeting with their legal counsel and authorized agent, Fred Smith, Esq. Through their counsel, Defendants demanded additional stock and/or cash consideration in excess of the consideration called for under the Agreement.  Defendants, through their counsel, threatened that if they did not receive such additional items of value, they would file an involuntary bankruptcy petition against Aero Marine and/or lodge a complaint with the Securities and Exchange Commission alleging that Aero Marine had made material misrepresentations in its federal securities filing. Defendants threatened to take such actions with full knowledge that no grounds for a bankruptcy petition against Aero Marine existed under the federal bankruptcy code, that

Aero Marine is in fact a solvent and financially healthy company, and that Aero Marine had not made any material misrepresentations or omissions in its securities filings.

The alleged demand by counsel on behalf of Della Penna and Werner was for additional stock or cash consideration to complete the transaction, which falls within the purchase or sale of securities. See 15 U.S.C. § 77b(a)(1)(definition of security). In addition, the allegations of extortion could be cast as the continuing securities fraud. See SEC Rule 10b-5; Zandford, 533 U.S. at 822 (for purposes of securities fraud "[i]t is enough that the scheme to defraud and the sales of securities coincide.").

As a practical matter, the claims in the complaint arise only from the Agreement.  Absent the parties' promises to buy and sell Transporter and IEP stock, respectively, there are no other "schemes" or transactions.  Della Penna and Werner's actions with respect to the alleged extortion "are properly viewed as a course of business" which included securities fraud." See Sell, 2006 WL 322469 at 11; see also Bald Eagle, 189 F.3d at 330 ("Conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities.").

It is incongruous to divide the transaction into component parts in order to cast a RICO claim.  Even if the extortion allegations are not actionable as securities fraud, those

allegations are closely connected to and dependent upon conduct

undertaken in connection with the buy/sell Agreement.  In the

court's view, the RICO allegations in Aero Marine's compliant

comprise an ongoing fraudulent scheme "in connection with" the

purchase and sale of stock.  Accordingly, section 107 of the

PSLRA bars Aero Marine's extortion claim as a predicate act under

the civil RICO statute.  The court recommends that Della Penna

and Werner's motion to dismiss the RICO claim be granted.

      2.    Fourth Cause of Action - Nev. Rev. Stat. §§
             90.570, 90.600 (Securities Fraud)

Della Penna and Werner contend that Aero Marine's fourth

cause of action, based on Nevada Blue Sky laws[2], should be

---

[2]  Nev. Rev. Stat. § 90.570 provides:

In connection with the offer to sell, sale, offer to
purchase or purchase of a security, a person shall not,
directly or indirectly:

1. Employ any device, scheme or artifice to defraud;

2. Make an untrue statement of a material fact or omit to
state a material fact necessary in order to make the
statements made not misleading in the light of the
circumstances under which they are made; or

3. Engage in an act, practice or course of business which
operates or would operate as a fraud or deceit upon a
person.

Nev. Rev. Stat. § 90.600 provides:

It is unlawful for a person to make or cause to be made, in
a record filed with the Administrator or in a proceeding
under this chapter a statement that the person knows or has
reasonable grounds to know is, at the time and in the light
of the circumstances under which it is made, false or

stricken because it is founded on a Nevada statute and the Agreement requires the application of Oregon law.  Further, all of the facts involving the alleged securities transaction occurred in Oregon and Nevada law is irrelevant to a securities transaction that occurred in Oregon.

Aero Marine responds that because the action is based on Nevada Blue Sky laws and not on a breach of the Agreement, the choice of law provision in the Agreement is not applicable. Relying on Sutter Home Winery, Inc. v. Vintage Selections, Ltd., 971 F.2d 401, 407 (9th Cir. 1992), Aero Marine contends that "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision."  Rather, they are controlled by the law of the forum state, in this case Nevada.

Aero Marine does not dispute Della Penna and Werner's assertions in the pleadings and at oral argument that the events related to the Agreement occurred in Oregon, not Nevada.  Nor does Aero Marine dispute that the only connection between Nevada and the transaction is that both IEP and Transporter are registered as Nevada Corporations.  In addition, the Nevada District Court granted a change of venue after making the following findings:

---

misleading in a material respect.

18 - FINDINGS AND RECOMMENDATION                              [LB]

[A] substantial part of the events or omissions giving rise
to the claim did not occur in Nevada.  The causes of action
in this matter arise primarily from representations made to
Plaintiff by Defendants that culminated in execution of a
technology purchase agreement.  Plaintiff itself
"acknowledges that the relevant agreements in the case were
primarily negotiated and executed in Oregon and many of the
misrepresentations made by Della Penna and Werner were made
in August 2004 in Mt. Hood, Oregon."

In fact, the only events that Plaintiff alleges occurred
outside of Oregon are "many communications between the
parties [that] took place over the telephone when the
parties were in various locations, not necessarily Oregon."
The only material event that may have occurred in Nevada was
Defendants Werner and [Della] Penna's alleged appearance at
Plaintiff's stockholder meeting, although the record is
devoid of ay assertion that even this event occurred in
Nevada.  Even if this appearance did occur in Nevada, the
sparse additional support linking the case to this forum, <u>in
light of the copious and admitted facts tying this case
primarily to Oregon, compels the conclusion that this Court
is an improper venue</u>. . . .

<u>Aero Marine Engine, Inc. v. Transporter, Inc., et al.</u>, CV-S-05-

0664-RCJ-(LRL) (D.Nev. September 15 2006)(emphasis added).

Pursuant to Fed. R. Evid. 201, the court will take judicial

notice of the Nevada District Court's findings[3] regarding the

parities contacts with Nevada and Oregon.

--------

   [3]  When ruling on a Rule 12(b)(6) motion to dismiss, if a
district court considers evidence outside the pleadings, it must
normally convert the 12(b)(6) motion into a Rule 56 motion for
summary judgment, and it must give the nonmoving party an
opportunity to respond.  <u>See</u> Fed. R. Civ. P. 12(b); <u>Parrino v.
FHP</u>, Inc., 146 F.3d 699, 706 n.4 (9th Cir. 1998).  A court may,
however, consider certain materials--documents attached to the
complaint, documents incorporated by reference in the complaint,
or matters of judicial notice--without converting the motion to
dismiss into a motion for summary judgment.  <u>See</u> <u>Van Buskirk v.
CNN</u>, 284 F.3d 977, 980 (9th Cir. 2002); <u>Barron v. Reich</u>, 13 F.3d
1370, 1377 (9th Cir. 1994).

The court agrees with Aero Marine that the terms of the Agreement do not limit the applicability of state "Blue Sky" investor protection acts.  Indeed, state securities statutes are intended to protect the investor and it has been found to be against public policy to permit the use of choice of law clauses to circumvent this "legislatively created shield."  See In re Infocure Securities Litigation, 210 F.Supp.2d 1331, 1362 (N.D.Ga. 2002)(and cases cited therein); see also Jacobs v. FDIC, 638 F.Supp. 214, 215 (E.D.Tenn. 1986)("When liability arises from a 'breach of duty imposed by statute or case law and not by contract' the liability is in tort.").  Accordingly, any violation of state "Blue Sky" investor protection acts should be governed by tort analysis, not the choice of law provision in the Agreement.  Nevertheless, the court must still determine which state has the most significant relationship to the occurrence and the parties, and thus which state's law should be applied.

As a starting place, the court must follow the well-established rule that a federal court exercising supplemental jurisdiction is bound to apply the law of the forum state, including its choice of law rules.  See, e.g., Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1164 (9th Cir. 1996).  Aero Marine filed this action in Nevada, the forum state.  By motion of Della Penna and Werner, venue was transferred to Oregon, pursuant to 28 U.S.C. §1404(a).  Generally, when a change

of venue occurs pursuant to section 1404(a), the transferee
district court is obligated to apply the state law that would
have applied absent the change of venue -- Nevada state law.
See, e.g., VanDusen v. Barrack, 376 U.S. 612, 639 (1969)(When a
change of venue occurs pursuant to 28 U.S.C. s 1404(a), "[t]he
transferee district court must be obligated to apply the state
law that would have been applied if there had been no change of
venue."). Accordingly, the court will turn to Nevada choice of
law provisions to determine which state's law should apply to
Aero Marine's tort claims.

Under Nevada law, the law of the forum governs in a tort
action unless another states has an "overwhelming interest" in
the application of its laws. Motenko v. MGM Dist., Inc., 112
Nev. 1038, 921 P.2d 933, 935 (1996). Pursuant to the Nevada
Supreme Court's decision in Motenko, the law of the forum is
presumed to govern unless two or more of four enumerated factors
show that another state has an overwhelming interest in the
litigation. These factors are:

> (a) it is the place where the conduct giving rise to the
> injury occurred;
>
> (b) it is the place where the injury is suffered;
>
> (c) the parties have the same domicile, residence,
> nationality, place of incorporation, or place of business
> and it is different from the forum state;

> (d) it is the place where the relationship, if any, between
> the parties is centered.

112 Nev. 1038, 921 P.2d at 935.

In this case, at least two factors favor application of Oregon law. The tort at the center of Aero Marine's fourth cause of action is the allegedly fraudulent inducement by Della Penna and Werner of Aero Marine to purchase all of Transporter's stock and acquire the Common Stock of Aero Marine. The first factor set forth in <u>Motenko</u> is the place where the alleged tortious conduct occurred. As set forth above, that place is clearly Oregon rather than Nevada. The second factor is where the injury was suffered. On this factor, the record before the court is incomplete, but that place is at least in part, Oregon. It may also be, in part, the place where Aero Marine has its headquarters or principal place of business, or perhaps the place where its owner or owners are located. While Aero Marine is registered as a Nevada corporation, there is nothing in the complaint to indicate whether its headquarters, its principal place of business, or its owner(s) are in Nevada or elsewhere. At this juncture, the court may only conclude that part of the injury occurred in Oregon. The third factor is the requirement that the parties have the same domicile, residence, nationality, place of incorporation, or place of business, and that place be different from the forum state. Both Aero Marine and Transporter are incorporated in Nevada and Della Penna and Werner reside in

22 - FINDINGS AND RECOMMENDATION                          [LB]

Oregon, so the third factor weighs in favor of Nevada as the forum state.  Finally, the fourth factor is the place where the relationship between the parties is centered.  The precise application of this factor to the facts of this case is somewhat unclear from Nevada case law, but the court concludes that the relationship is centered in Oregon, given the earlier findings of the Nevada District Court.  Both Della Penna and Werner reside in Oregon, and no other relationship exists between the parties that is centered elsewhere.  In the court's view, this fourth factor of the test set forth in <u>Motenko</u> is satisfied in favor of Oregon. Thus, at least two factors have been satisfied and the court should apply the law of Oregon because it has an "overwhelming interest" in the application of its law to this case.  The court recommends that Aero Marine's fourth cause of action pursuant to Nevada securities law be dismissed.  Aero Marine should be granted leave to file an amended complaint alleging violations of Oregon securities law.

     3.   Seventh Cause of Action - Breach of Contract

     Della Penna and Werner contend that Aero Marine's seventh cause of action, breach of contract, should be dismissed because Aero Marine failed to allege that it performed its obligations under the Agreement.  In addition, Della Penna and Werner are not parties to the Agreement and, therefore, could not have breached a contract to which they were not parties.

In response, Aero Marine refers the court to paragraph 9 of the complaint, which states:

> Pursuant to the terms of the Agreement, Aero Marine issued one million shares of its common stock to Della Penna and Werner on September 9, 2004. Della Penna was issued 515,000 shares under Aero Marine stock certificate no. 6,010. Werner was issued 485,000 shares under Aero Marine stock certificate no. 6,011. The Aero Marine stock issued to Della Penna and Werner shall hereinafter be collectively referred to as the "Common Stock."

The court finds that paragraph 9 sets forth allegations of Aero Marine's performance under the contract and is adequate to state a claim. Moreover, the court finds that notwithstanding Della Penna and Werner's claims that they were not parties the contract, Aero Marine's claim for breach of contract will survive the motion to dismiss. Della Penna and Werner do not dispute that, despite the pending bankruptcy proceeding, Aero Marine is able to state a claim for breach of contract against Transporter. Based on the pleadings before the court, it is premature to dismiss Della Penna and Werner from the claim on the ground that they were not parties to the Agreement. Della Penna or Werner's motion to dismiss (or strike) the breach of contract claim should be denied. Della Penna and Werner should be granted leave to raise the issue again at summary judgment or trial.

    4.  Ninth Cause of Action - Injunctive Relief

Della Penna and Werner contend that Aero Marine is not proceeding against Transporter because there has been no relief granted from the Bankruptcy Court's stay order. Because this

24 - FINDINGS AND RECOMMENDATION                          [LB]

court is prevented from entering any order against Transporter, Della Penna and Werner argue that the court should not enjoin anything which could only be partial relief.   In addition, Della Penna and Werner assert that the stock in Aero Marine was given to them as a partial performance of the Agreement and they are entitled to keep the stock.

`     The court is aware of the bankruptcy proceeding but declines to either strike or dismiss this claim for relief based only the conclusory statements set forth by Della Penna and Werner.   As above, Della Penna or Werner's motion to dismiss (or strike) the claim for injunctive relief should be denied.   Della Penna and Werner should be granted leave to raise the issue again at summary judgment or trial.

**IV.  Motion to Make More Definite and Certain**

          A.   <u>Legal Standard</u>

     Allegations of fraud must satisfy the requirements of Fed. R. Civ. P. 9(b) to survive a motion to dismiss.   Rule 9(b) provides that "[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.   Malice, intent, knowledge, and other general condition of mind of a person may be averred generally."   The intent of Rule 9(b) is to "prevent the filing of claims merely to uncover unknown wrongs."   <u>Semegen V. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985).

25 - FINDINGS AND RECOMMENDATION                          [LB]

Rule 9(b) requires a plaintiff to attribute fraudulent acts or statements to a particular defendant.  Schreiber Distributing v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).  However, the Ninth Circuit has recognized an exception to this rule for claims against a corporation where the alleged misstatements are attributed to a group.  Under such circumstances, a plaintiff may satisfy Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.  Haltman v. Aura Systems, Inc., 844 F.Supp. 544, 547 (C.D.Cal. 1993).

      B.  Discussion

Della Penna and Werner move the court for an order requiring Aero Marine to make only the allegations of paragraph 11 of the complaint more definite and certain.  Specifically, Della Penna and Werner ask that Aero Marine be required to specify which representations were allegedly made to Aero Marine and which were allegedly made to IEP.  Further, they request that Aero Marine be required to allege which defendant made which representation to whom.  Aero Marine responds that paragraph 11 alleges specifically that Della Penna and Werner made certain representations in August 2004, during a series of telephone conferences and some face-to-face meetings held in Mr. Hood, Oregon.

In addition to satisfying the pleading requirements of Rule 9(b), the court must also consider whether Aero Marine's complaint meets the pleading requirements under the PSLRA. Securities fraud pleadings under the PSLRA must specify:

> (1) . . . each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

> (2) . . . the complaint shall . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(1), (2). The Ninth Circuit has interpreted the PSLRA to require a private plaintiff "to plead particular facts giving rise to a strong inference of deliberate recklessness," in which the averred facts must strongly suggest actual intent to commit fraud.  In Re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970, 977-979 (9th Cir. 1999). Pleading "motive and opportunity" or mere recklessness, without more, is insufficient.  Id. at 979.

As mentioned above, Della Penna and Werner challenge only paragraph 11 of the complaint as lacking the requisite specificity.  After a review of the complaint, the court is satisfied that paragraph 11 meets the pleading requirements of Rule 9(b) and the PSLRA.  Aero Marine has sufficiently pleaded the time, place, specific conduct and intent of misrepresentation

necessary for either common law fraud or securities fraud claims against Della Penna and Werner.

Aero Marine alleges Della Penna and Werner made a series of representations that they knew were false in order to induce Aero Marine into entering the Agreement and issuing stock to Della Penna and Werner.  In paragraph 11, Aero Marine sets forth the misleading statements made by either Della Penna or Werner, without distinguishing, on behalf of the corporation (Transporter) to IEP/Aero Marine.  When read in conjunction with paragraphs 12 through 15, the court is satisfied that paragraph 11 of the complaint is sufficient to show that Della Penna and Werner knew the Transporter software did not perform as they represented at the time of the transaction and that they consciously disregarded that knowledge to receive the benefit of the Agreement.  The allegations provide sufficiently detailed facts to "constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." See, e.g., Silicon Graphics, 183 F.3d at 970.  Aero Marine's complaint meets the standards for both Rule 9(b) and securities fraud.  The court recommends that Della Penna and Werner's motion to make more definite and certain be denied.

**CONCLUSION**

Based on the foregoing, Della Penna and Werner's Motions Against Plaintiff's Complaint (doc. #84) should be GRANTED, in

part, and DENIED, in part, as follows:  Aero Marine's Second

Cause of Action (Racketeering - 18 U.S.C. § 1964(c)) and Fourth

Cause of Action (Securities Fraud; Nev. Rev. Stat. §§ 90.570,

90.600) should be DISMISSED.  Aero Marine should be granted leave

to file an amended complaint alleging violations of Oregon

securities law.  Della Penna and Werner's motions should be

DENIED in all other respects.  Della Penna and Werner should be

granted leave, in accordance with this Findings and

Recommendation, to renew portions of their motion at a later

time.

DATED this  17  day of April 2006


 /s/ Donald C. Ashmanskas
DONALD C. ASHMANSKAS
United States Magistrate Judge


**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a

United States District Judge for review.  Objections, if any, are

due May 2, 2006.  If no objections are filed, review of the

Findings and Recommendation will go under advisement on that

date.  If objections are filed, a response to the objections is

due fourteen days after the date the objections are filed and the

review of the Findings and Recommendation will go under

advisement on that date.

29 - FINDINGS AND RECOMMENDATION                          [LB]